IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Daniel F., Kristy F., individually and on behalf of R.F., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>UnitedHealthcare Insurance Company,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Case No. 2:24-cv-00764-TC-DBP<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

  Plaintiffs Daniel F. and Kristy F, individually and on behalf of their minor child, R..F., seek an award of benefits under an employee welfare benefits plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA) and damages under the Mental Health Parity and Addiction Equity Act of 2008 (the Parity Act) in connection with Defendant UnitedHealthcare Insurance Company's (United) rejection of coverage for R.F.'s mental health treatment from residential treatment centers in Colorado and Arizona.

  This matter comes before the court on the Defendant's unopposed motion to transfer under 28 U.S.C. § 1404(a) from this court to the Western District of Washington. (ECF No. 29.) For the reasons discussed below, the court grants the Defendant's motion.

## BACKGROUND

  The Plaintiffs have healthcare benefits through Daniel's employee welfare benefits plan (the Plan), provided by his employer, ONIT. (Compl., ECF No. 2 at ¶ 1.) United, the claims administrator for medical benefits under the Plan, is a Connecticut corporation with its principal

place of business in Hartford, Connecticut. (Decl. Ngoc Han Nguyen, ECF No. 29-1 at ¶¶ 4.) ONIT, the Plan Administrator, is located in Texas. (ECF No. 29-1 at ¶¶ 6, 9.)

R.F. first received mental health treatment at Open Sky Wilderness Therapy (Open Sky) in Colorado from October 11, 2021, until December 29, 2021. (Compl. ¶ 2.) United denied the Plaintiffs' request for coverage for R.F.'s treatment at Open Sky. (Id. ¶ 35.) After the Plaintiffs appealed the decision, United conducted a secondary review but upheld its denial of coverage. (Id. ¶¶ 36, 37, 42–44.) United also denied coverage for the cost of R.F.'s transportation to Open Sky, which was provided by a company called Safeguard, Inc. (Safeguard). (Id. ¶¶ 3, 26.) On November 9, 2021, R.F. received a neuropsychological evaluation from the Multidisciplinary Association for Psychedelic Studies (MAPS) in Colorado. (Id. ¶¶ 45, 48.) While United initially denied coverage outright, the Plaintiffs appealed the decision and United eventually agreed to cover a portion of the testing. (Id. ¶¶ 46–48.) Finally, from January 12, 2022, through July 26, 2022, R.F. received additional treatment from In Balance Transitional Living (In Balance) in Arizona, an expense that United also denied coverage for. (Id. ¶¶ 2, 50.)

The Plaintiffs live in King County, Washington. They allege that United "may be found and does business in Utah," without providing additional detail. (Id. ¶ 6.) None of United's claim administrators or reviewers who issued decision letters in response to the Plaintiffs' appeals of the denials of coverage were in located in Utah at the time the decisions were issued. (See ECF No. 29-1 at. ¶ 11 (Explaining that United's claim reviewers were located in Kentucky, India, and Florida at the time the decisions were issued).)

## ANALYSIS

The Defendants assert that this action should be transferred to the Western District of Washington because 1) the ERISA claims could have been brought there (but not in Utah) under

2

the statute's venue provision; and 2) transfer would be more convenient and cost-effective for the parties, witnesses, and evidence.  The Plaintiffs have not opposed the motion to transfer or provided any evidence contrary to United's factual representations.

I. The ERISA Venue Provision

ERISA contains a venue provision, 29 U.S.C. § 1132(e)(2), which provides that when an action is brought in a district court of the United States "it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found …."  29 U.S.C. § 1132(e)(2); see also R.J. v. Optima Health, 649 F. Supp. 3d 1207, 1212 (D. Utah 2022).  ERISA claims can therefore be brought in any venue that qualifies under one or more of these circumstances.

There is no dispute that the Plan is administered in Connecticut, so, under the first prong of ERISA's venue provision, Connecticut is an acceptable venue.  Turning to the second prong, this court has consistently held that a breach of the plan "occurs at the place the policy holder resides and would have received benefits."  IHC Health Servs., Inc. v. Eskaton Props., Inc., No. 2:16-cv-3-DN, 2016 WL 4769342, at *4 (D. Utah Sept. 13, 2016); see also Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan, No. 2:17-cv-1236-TS, 2018 WL 1406600, at *2 (D. Utah Mar. 19, 2018); ("[U]nder ERISA, the duty is owed to the plan participant and any breach of duty owed under the plan occurs at the place where the plan participant resides.  The place is the location where the payment is to be made, even though the services may have been provided at an out-of-state location.").  In this case, while R.F.'s treatments were provided in Colorado and Arizona, there is no dispute that the Plaintiffs, the plan participants, all reside in Washington.  Accordingly, under the second prong of ERISA's venue provision, the Western District of

Washington is another appropriate venue for litigating the Plaintiffs' ERISA claim.

Finally, under the third prong, the court must determine if United "resides or can be found" in Utah—in other words, if this District has personal jurisdiction over United. See Briesch v. Auto. Club of S. California, 40 F. Supp. 2d 1318, 1320 (D. Utah 1999). To find a "federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1210 n.3 (10th Cir. 2000). Because this is a federal question case and § 1132(e)(2) authorizes nationwide service of process, this Court has personal jurisdiction over United so long as due process is satisfied. Id. at 1210.

Turning to the Due Process Clause of the Fourteenth Amendment, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Pro Axess, Inc. v. Orlux Distrib'n, Inc., 428 F.3d 1270, 1276 (10th Cir. 2005) (same). A defendant has sufficient contacts with the forum State if "[it] should reasonably anticipate being haled into court there … [without] offend[ing] traditional notions of fair play and substantial justice." World–Wide Volkswagen, 444 U.S. at 297; see also Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 320 (1945).

In exploring the "minimum contacts" requirement, the Supreme Court distinguishes between two types of personal jurisdiction: general and specific. A court has general jurisdiction over claims against corporations that are "at home" in the forum state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Companies are "at home" in the states

4

where they are organized and have their principal place of business. See Daimler AG v. Bauman, 571 U.S. 117, 123 (2014). By contrast, a court can exercise specific jurisdiction if "the plaintiff's claims … arise out of or relate to the defendant's" forum contacts. Id. at 127. "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 262 (2017) (cleaned up).

Here, the court cannot reasonably infer that this District has either general or specific jurisdiction over United. The record indicates that United is at home and has its principal place of business in Connecticut—meaning that United does not "reside" here. (See ECF No. 29-1 at ¶ 4.) And the Plaintiffs' allegations that United "may be found and does business in Utah" are not enough to show that United is "at home" in this District. This District also lacks specific jurisdiction over United because the facts underlying the Plaintiffs' ERISA claim do not arise out of United's contacts with Utah, to the extent it has any. Specifically, there is no evidence or suggestion that United's relevant coverage decisions were made in Utah, nor was any care provided to R.F. there—rather, the Plaintiffs' ERISA claim relates to the Defendants' conduct in Connecticut, Texas, Kentucky, Florida, India, Washington, and arguably Colorado, and Arizona. where the care was provided. Cf. Peay, 205 F.3d at 1213 (Finding court had personal jurisdiction over defendants in Utah because the defendants had pre-certified the plaintiff's treatment at a Utah hospital and therefore rendered benefits in Utah, putting them on notice of potential ERISA claims there).

## II. Section 1404(a) Factors

The court also finds that transferring this case under 28 U.S.C. § 1404(a) to the Western District of Washington is more convenient for the parties and serves the interest of justice. See Chrysler Credit Corp. v. Cty. Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). Motions to change venue under 28 U.S.C. § 1404(a) are considered on "an individualized, case-by-case consideration of convenience and fairness." Id. at 1516 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "[W]hen reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." Butikofer v. Nygren, No. 2:16-cv-610-DN, 2016 WL 7190556, at *2 (D. Utah Dec. 12, 2016) (same). To determine whether the party seeking transfer has met its burden, the court considers:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Id. (quoting Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)); see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167 (10th Cir. 2010) (same).

Turning to the first § 1404(a) factor, the Tenth Circuit instructs that "unless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992); see also Alter v. F.D.I.C., No. 2:13-cv-456-TS, 57 F. Supp. 3d 1325, 1335 (D. Utah 2014) (same). But in cases where the plaintiff does not reside in the district or where the facts giving rise to the lawsuit have no "material relation or

6

significant connection" to the plaintiff's chosen forum, then a plaintiff's choice receives less deference. See Emps. Mut. Cas. Co., 618 F.3d at 1167–68; Butikofer, 2016 WL 7190556, at *2.

The court gives no deference to the Plaintiffs' choice of forum because the record shows that none of the parties reside or are found in Utah, nor does the claim arise from events related to Utah. Rather, the facts of this case relate to witnesses, material events, and documents in: Washington, where the Plaintiffs live; Connecticut, where the Defendant has its principal place of business; Colorado and Arizona, where care was provided; Texas, where the Plan Administrator is based and where a United coverage claim reviewer was located; as well as Kentucky, Florida, and India, where additional relevant claim reviewers were based. (See ECF No. 29-1.) Accordingly, the court finds that the Western District of Washington is both more convenient and relevant to the dispute than this District. Indeed, the case's only apparent connection to Utah is that the Plaintiffs' attorneys are based here, a fact which this court has consistently held is irrelevant to the § 1404(a) analysis. See, e.g., Howard W. v. Providence Health Plan, No. 2:20-cv-463-JNP, 2021 WL 4459856, at *4 n.1 (D. Utah Sept. 29, 2021) (Finding that "the convenience of counsel is irrelevant and should not be considered in evaluating whether transfer is proper under § 1404(a)").

### III.     Convenience for Third-Party Witnesses

Usually, the second § 1404(a) factor, "[t]he convenience of witnesses[,] is the most important factor in deciding a motion" to transfer. Emps. Mut. Cas. Co., 618 F.3d at 1169 (citing Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993). "However, the convenience of witnesses is not as important in ERISA cases since the court's review is generally limited to the administrative record." Howard W., 2021 WL 4459856, at *5 (citing IHC Health Servs., Inc., 2016 WL 4769342, at *9); see also Rula A.-S. v. Aurora Health

Care, No. 2:19-cv-982-DAO, 2020 WL 7230119, at *4 (D. Utah Dec. 8, 2020) (same). In any event, to the extent witnesses may be required to testify, "the relevant witnesses in ERISA cases are those involved in administering the plan and denying the claims." Rula A.-S., 2020 WL 7230119, at *4. Here, as discussed above, the relevant witnesses involved in administering the Plan and denying Plaintiffs' claims are located in Connecticut, Texas, Kentucky, Florida, and India. (ECF No. 29-1 at ¶ 11.) These locations are also where any relevant documents outside the administrative record would be found. The location of the evidence and witnesses to the facts underlying the Plaintiffs' ERISA claim weighs in favor of transfer.

"The fact that [the] Plaintiffs have also asserted a Parity Act claim does not change this analysis" of witness convenience. Rula A.-S., 2020 WL 7230119, at *4. That is because "[t]he operative facts for a Parity Act claim center on the plan itself and the administrator's application of the plan." Id. And "[a]lthough additional discovery beyond the administrative record may be available for a Parity Act claim, the relevant issues are the policies and decisions of the administrator[,] and the information considered by the administrator." Id. As discussed above, these policies and decisions were made outside of Utah. Accordingly, the Western District of Washington is also a more convenient forum than Utah for litigating the Plaintiffs' Parity Act claim.

## IV. Other Considerations

Additional practical considerations surrounding whether to transfer the case are either neutral or weigh in favor of transfer. For example, the cost of litigating in the Western District of Washington is likely to be lower than in Utah because at least one party and some evidence is located there. This case does not involve the interpretation of any Utah laws. There are no apparent obstacles to conducting a fair trial in the District where the Plaintiffs are based. As

discussed above, there are no concerns about the Western District of Washington's personal jurisdiction over United because of ERISA's venue provision—and as a result, the court is not concerned about the enforceability of judgment in that District. Finally, the federal court management statistics for the 12-month period ending December 31, 2024, indicate that the Western District of Washington is less congested than this District.[1]

In sum, the court finds that these practical considerations and the interest of justice weigh in favor of transfer to the Western District of Washington.

## CONCLUSION

The court finds that ERISA's venue provision and the § 1404(a) factors weigh in favor of transfer to the Western District of Washington. Accordingly, United's motion (ECF No. 29) is GRANTED.

DATED this 16th day of June, 2025.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[1] See U.S. Courts, National Judicial Caseload Profile (2024), available at: https://www.uscourts.gov/sites/default/files/2025-2/fcms_na_distprofile1231.2024.pdf.